UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23005-ALTMAN/Lett

DALIA SKINDARIENE,

     *Plaintiff,*

*v.*

ROYAL CARIBBEAN CRUISES, LTD.,

     *Defendant.*

_____/

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Dalia Skindariene, our Plaintiff, "was a passenger aboard Defendant's cruise ship, *Freedom of the Seas*, on September 14, 2023." Joint Statement of Undisputed Facts ("JSUF") [ECF No. 44] ¶ 1. While onboard, Skindariene "went to the ice-skating rink on the ship, and a crew member provided her with a pair of ice skates." *Id.* ¶ 2. Unfortunately, Skindariene fell and was injured while ice-skating. *See* Amended Complaint [ECF No. 23] ¶¶ 12–13 ("Skindariene [fell] onto the ice. As a result, Skindariene sustained severe injuries[.]"). Skindariene subsequently sued Royal Caribbean, asserting seven counts of negligence and vicarious liability. *See generally id.* ¶¶ 32–128. The Defendant now moves for summary judgment. *See* Motion for Summary Judgment ("MSJ") [ECF No. 43] at 12 ("Plaintiff cannot demonstrate that there is a genuine issue of material fact as to any of the claims alleged in her Amended Complaint.").[1] After careful review, we **GRANT** Royal Caribbean's request for summary judgment on Counts IV through VII but **DENY** the rest of the MSJ.

---

[1] The MSJ has been fully briefed and is ripe for adjudication. *See* Amended Response to Defendant's Motion for Summary Judgment ("Response") [ECF No. 54]; Reply in Support of Motion for Summary Judgment ("Reply") [ECF No. 56].

### THE FACTS

On September 14, 2023, "at approximately 4:00 p.m.," Skindariene "went to the ice-skating rink" aboard the Defendant's cruise ship, *Freedom of the Seas*. Defendant's Statement of Material Facts ("DSMF") [ECF No. 42] ¶ 2–3; *see also* Plaintiff's Amended Response to Defendant's Statement of Material Facts ("DSMF Response") [ECF No. 52] ¶¶ 2–3 ("After further consideration, undisputed unless other facts come to Skindariene and/or her counsel's attention.").[2] At the skating rink, "a crewmember provided [Skindariene] with a pair of ice skates." DSMF ¶ 3; *see also* DSMF Response ¶ 3 ("[U]ndisputed[.]"). Skindariene thought this initial pair of skates "looked too small[,]" so she "exchanged them for a larger pair." DSMF ¶ 4; *see also* DSMF Response ¶ 4 ("[U]ndisputed[.]").

But there were problems with this second pair of skates too. Skindariene "immediately noticed that the laces in the second pair of skates had knots and were frayed"—and, "when she put on and laced up the skates," she had to "skip[ ] a few of the holes because the laces were too short." DSMF ¶¶ 5–6; *see also* DSMF Response ¶ 5–6 ("[U]ndisputed[.]"). During Skindariene's skating session, Royal Caribbean played an "audio announcement," notifying skaters that "you can ask an available staff member to help you if you are not sure if your skates are secure." DSMF Response ¶ 27; *see also* Defendant's Reply Statement of Material Facts ("DSMF Reply") [ECF No. 55] ¶ 27 ("Undisputed."). Despite these issues, Skindariene "did not request a different pair of skates or a new set of laces." DSMF ¶ 5.

Skindariene then entered the "very crowded" ice-skating rink. DSMF ¶ 7; *see also* DSMF Response ¶ 7 ("[U]ndisputed[.]"). Skindariene skated "for around 10-15 minutes before the incident

---

[2] This answer—which Skindariene repeats at various points in her DSMF Response—violates our Local Rules in two ways. *First*, it doesn't "use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.'" S.D. FLA. L.R. 56.1(b)(2)(B). *Second*, to the extent she's trying to preserve her right to object later, Skindariene can't dispute a material fact unless she provides "evidentiary citations supporting [her] position[.]" *Id.* R. 56.1(b)(2)(C). Since Skindariene hasn't provided these "evidentiary citations," we'll treat these answers as if she said "undisputed."

at issue without falling." DSMF ¶ 8; *see also* DSMF Response ¶ 8 ("[U]ndisputed[.]"). Skindariene felt that "the ice was of poor quality"—as it appeared "snowy" and "shredded"—but "she continued to skate because she wanted to finish a couple of laps around the rink." DSMF ¶¶ 10–11; *see also* DSMF Response ¶¶ 10–11 ("[U]ndisputed[.]"). During these final laps, one of Skindariene's skates "bumped into something uneven on the ice," causing her to "[lose] her balance and [fall]." DSMF ¶ 12; *see also* DSMF Response ¶ 12 ("Disputed. When asked 'Do you know that it was ice?' she answered, 'I believe it was ice.'").[3] The parties disagree about whether anyone "was near Skindariene at the time she lost her balance or in the seconds leading up to it[.]" DSMF ¶ 15. Royal Caribbean says "[n]obody" was near her and that Skindariene "did not appear to be attempting to skate around anyone, or making an evasive maneuver to avoid colliding with anyone," at the time she fell. *Ibid.* Skindariene insists that there was a "young girl . . . kicking her feet nearby to the left of Skindariene" when she lost her balance. DSMF Response ¶ 15. The entire incident "was captured by two CCTV cameras." DSMF ¶ 13; *see also* Notice of Filing USB Drive ("CCTV Videos") [ECF No. 62] (conventional filing of USB drive containing the two CCTV videos).[4]

In her operative Amended Complaint, Skindariene argues that three dangerous conditions contributed to her fall: (1) the ice had "unreasonable slopes/grooves that made the ice bumpy," making it more difficult for skaters to "control [their] trajectory"; (2) the rink "was overcrowded, making it extremely difficult to skate and navigate the ice due to people blocking the flow of skaters"; and (3) Skindariene's skates "were short, worn-out, and there were knots in the laces making it impossible to completely lace up the skates, affecting her balance and stability[.]" *Id.* ¶ 14. Skindariene

---

[3] "Where (as here) one party disputes only a portion of the opposing party's material fact, we presume that the rest of that material fact is admitted unless there's record evidence to suggest otherwise." *Purcell v. City of Ft. Lauderdale*, 753 F. Supp. 3d 1308, 1318 n.3 (S.D. Fla. 2024) (Altman, J.) (first citing S.D. FLA. L.R. 56.1(c); and then citing *Williams v. Mallet*, 707 F. Supp. 3d 1340, 1348 n.6 (S.D. Fla. 2023) (Altman, J.)).

[4] These two videos are labeled "CCTV Conversion 2" and "CCTV Conversion 3" on the USB drive.

advances seven counts based on these allegedly dangerous conditions. Count I through V alleges that Royal Caribbean negligently failed to: (1) inspect the ice-skating rink (Count I), *see id.* ¶ 34; (2) maintain the rink (Count II), *see id.* ¶ 47; (3) remedy the rink's alleged defects (Count III), *see id.* ¶ 59; (4) warn Skindariene about the rink's allegedly dangerous conditions (Count IV), *see id.* ¶ 72; and (5) manufacture, design, install, and approve a non-dangerous ice-skating rink (Count V), *see id.* ¶ 88. Count VI contends that the Defendant is vicariously liable "for the negligent acts of the crewmember who provided the subject skates to Skindariene with laces that were too short[.]" *Id.* ¶ 108. Finally, in Count VII, Skindariene says that the Defendant is also vicariously liable "for the active negligence of its employees for their negligent design, construction and selection of the subject area." *Id.* ¶ 115.

## THE LAW

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)). A cruise line "is not liable to passengers as an insurer," but instead is liable to passengers "only for its negligence." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (cleaned up). "The elements of a maritime negligence claim, in turn, are well-established, and stem from general principles of tort law." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). A cruise passenger must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara*, 920 F.3d at 720 (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court

must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington*, 261 F.3d at 1265.

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex,* 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Royal Caribbean is moving for summary judgment on five grounds. *First*, Royal Caribbean argues that the CCTV footage of the incident "show[s] that Plaintiff simply lost her balance and fell." MSJ at 6. Since the footage "shows there was no unreasonably dangerous condition that caused Plaintiff's fall," we must grant summary judgment "as to all claims alleged in the Amended Complaint." *Ibid. Second*, Royal Caribbean contends that it's entitled to summary judgment on all of Skindariene's direct-negligence claims (Counts I–V) because "there is no evidence that Defendant had either actual or constructive notice of any unreasonably dangerous condition that caused Plaintiff's accident." *Id.* at 7. *Third*, Royal Caribbean asserts that Skindariene's failure-to-warn claim (Count IV) fails as a matter of law "because the danger of slipping, falling, and getting injured while ice skating is open and obvious." *Id.* at 8. *Fourth*, Royal Caribbean insists that it can't be held vicariously liable (as alleged in Count VI) "for the crewmember who provided Plaintiff's skates" because "there is no evidence that the condition of Plaintiff's skate laces had anything to do with why or how she fell." *Id.* at 10. *Fifth*, Royal Caribbean claims that "there is no evidence that Defendant or any of its employees

or agents participated in [the design of the ice-skating rink and the ice skates] or approved of unreasonable designs," so we must grant summary judgment on Skindariene's negligent-design claims (Counts V and VII). *Id.* at 11. In the interest of judicial economy, we'll take up Royal Caribbean's first and fourth arguments first and then resolve the second, third, and fifth arguments in turn.

## I.   The CCTV Footage

Royal Caribbean first argues that CCTV footage of the rink shows that "Plaintiff simply lost her balance and fell." *Id.* at 6. "No reasonable juror could watch the videos[,]" Royal Caribbean says, "and conclude that Plaintiff's fall was caused by crowding, too-short laces, or an uneven ice surface particularly where, as here, nobody saw a defect in the ice where Plaintiff fell and Plaintiff herself is only assuming that it was a bump or cut in the ice that caused her to lose her balance." *Ibid.* Citing a magistrate judge's decision in *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5113943 (S.D. Fla. Aug. 14, 2018) (Simonton, Mag. J.), Skindariene responds that her testimony to the contrary is sufficient to rebut this video evidence and defeat summary judgment. *See* Response at 3 ("[Skindariene] here has testified to virtually the same facts regarding both the defective condition of the ice and of her skates as the plaintiff in *Lebron* did. Therefore, just as in *Lebron*, this Honorable Court should deny Defendant's motion for summary judgment, since there are genuine issues of material fact as to the existence of the dangerous conditions of the ice and skates."). Although Skindariene's argument isn't particularly persuasive, we ultimately agree that the CCTV footage isn't conclusive enough to justify summary judgment.

A hornbook rule of summary judgment is that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. In *Scott v. Harris*, however, the Supreme Court held that we needn't give this presumption to a non-movant's story if it is "blatantly contradicted by the record[.]" 550 U.S. 372, 380 (2007); *see also ibid.* ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that

no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). "For that reason, when an incident is recorded and the video 'obviously contradicts' the plaintiff's version of events, courts will accept the video's depiction of the events as controlling." *Buckman v. Morris*, 736 F. App'x 852, 853 (11th Cir. 2018) (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)). There are "two important requirements that must be met before we can disregard the non-moving party's version of events": (1) "the recording . . . must so utterly discredit the party's story that no reasonable jury could have believed that party"; and (2) "there must be no evidence that the recording has been doctored or altered." *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023); *see also ibid.* ("So if a valid recording completely and clearly contradicts a party's testimony, that testimony is not credible, and the court should disregard it."). Conversely, "if the recording renders a party's story merely unlikely yet does not necessarily contradict it, the default rule kicks in: we must accept the party's version for purposes of considering the motion for summary judgment." *Ibid.*

Skindariene testified in her deposition that she fell because "one of my skis bumped into something, there was something uneven or whatever was on the surface of the ice." Deposition of Dalia Skindariene ("Skindariene Depo.") [ECF No. 42-1] at 74:5–8. She further explained that the ice was getting "worse and worse" as she was skating. *Id.* at 68:14–15, 70:10. Skindariene claimed that her skate laces "were very poor quality" and "seemed to be too short for the shoe[.]" *Id.* at 56:9–11. For us to grant summary judgment in favor of Royal Caribbean on this issue, we must be satisfied that the CCTV footage "utterly discredit[s]" Skindariene's account that she tripped because of the unevenness of the ice, the quality of the skates, or some combination of the two. *See Brooks*, 78 F.4th at 1278.

We can safely say that this footage is not so definitive. It's true that both CCTV videos *could* support Royal Caribbean's position that "Plaintiff simply lost her balance and fell." MSJ at 6. But nothing about the video conclusively *disproves* Skindariene's contrary testimony that "the defective

condition of the ice and of her skates" caused her to fall. Response at 3; *see also* DSMF Response ¶ 14 ("The CCTV footage is too low resolution to see all defects on the ice."). Indeed, we think the video (when viewed in the light most favorable to Skindariene) *could* support her view that her skate "bumped into" an "uneven" portion of the ice before she fell. Skindariene Depo. at 74:5–7.[5] Since the CCTV footage doesn't "completely and clearly contradict[ ]" Skindariene's explanation that the ice and skates caused her to fall, we won't grant summary judgment on that basis. *Brooks*, 78 F.4th at 1278; *see also Shaw v. City of Selma*, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018) ("But where the recording does not clearly depict an event or action, and there is evidence going both ways on it, we take the [non-movant's] version of what happened.").

That said, we think the CCTV footage proves Royal Caribbean's point that "[n]obody else was near Skindariene at the time she lost her balance or in the seconds leading up to it, and she did not appear to be attempting to skate around anyone, or making an evasive maneuver to avoid colliding with anyone as alleged in the Amended Complaint." DSMF ¶ 15. Skindariene pushes back, saying that "[a] young girl can be seen kicking her feet nearby to the left of Skindariene . . . as soon as she loses balance." DSMF Response ¶ 15. While a young girl is indeed "kicking her feet" to Skindariene's left, the girl is several feet away from Skindariene and was parallel to Skindariene when she began to trip and fall. The footage thus establishes beyond peradventure that no one was near Skindariene (and that there was plenty of open ice in front of her) when she fell. We're confident that no reasonable jury—after viewing the CCTV footage—could conclude that this young girl (or anyone else on the rink) caused Skindariene to fall.

We thus **GRANT** summary judgment for Royal Caribbean on the limited issue that Skindariene's fall *wasn't* caused by "overcrowding" on the ice-skating rink. We reject Royal Caribbean's

---

[5] This "bump" can be seen at the 13 to 14 second mark of the "CCTV Conversion 2" video and the 15 to 16 second mark of the "CCTV Conversion 3" video. *See generally* CCTV Videos.

broader argument, however, that the CCTV footage is sufficient (standing alone) to support its request for summary judgment.

## II.     Evidence of Causation

Royal Caribbean next argues that "there is no evidence that the condition of Plaintiff's skate laces had anything to do with why or how she fell." MSJ at 10; *see also id.* at 9 ("[T]here is no evidence that the condition of the laces was dangerous or that it caused or contributed to [Skindariene's] accident in any way."). Royal Caribbean says that, without this evidence, we must find: (1) that Skindariene's skates didn't create a "dangerous condition" (which affects Counts I through V of the Amended Complaint), *id.* at 9; and (2) that Royal Caribbean is entitled to summary judgment on Count VI, which alleges that Royal Caribbean is vicariously liable "for the crewmember who . . . provid[ed] [Skindariene] with skates with laces that were too short," *id.* at 10. Skindariene says that her deposition "clearly creates a genuine issue of material fact on the issue of proximate causation"—and that, in any event, "it is just common sense that unreasonably dangerous skates can cause a skater to lose their balance[.]" Response at 18. We agree with Royal Caribbean.

To prove negligence, a plaintiff must show causation—*viz.*, that the defendant's "breach [of] duty actually and proximately caused the plaintiff's injury." *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1336–37 (11th Cir. 2023) (cleaned up). "To prove causation, a plaintiff must establish a cause and effect relationship between the alleged tortious conduct and the injury—that is, cause in fact (or 'actual' or 'but-for causation')—as well as the foreseeability of the conduct in question producing the alleged harm—*i.e.*, 'proximate causation.'" *Marabell v. NCL (Bahamas), Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020) (Bloom, J.). "Federal courts exercising admiralty jurisdiction may be guided by 'the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources.'" *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013) (Scola, J.) (quoting *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996)); *see also*

*Willis*, 77 F.4th at 1338 ("Without a controlling maritime principle, as is the case here, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." (cleaned up)). Florida law requires "evidence affording a reasonable basis for concluding that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough[.]" *In re Royal Caribbean*, 991 F. Supp. 2d at 1183 (quoting *Gooding v. Univ. Hosp. Building, Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)). An "impermissible inference" exists "when no direct evidence is presented on negligence or causation and a jury infers causation based on an inference of negligence." *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 959 (11th Cir. 2014).

There's no evidence linking the allegedly dangerous skates with Skindariene's fall (and her subsequent injuries). Skindariene points to three places in her deposition where she purportedly "creates a genuine issue of material fact on the issue of proximate causation." Response at 18. But, having reviewed those deposition excerpts, we find that Skindariene testified only about her *belief* that the skate's laces were defective in *some* way. *See* Skindariene Depo. at 46:8–12 ("I put those skates on. The laces, there was something wrong with the laces and I couldn't—there were knots on the laces and that prevented from kind of tightly tying the skates on."); *see also id.* at 54:14–17 ("Q: Okay. So in addition to the knots, the laces were frayed? A: Yes. The laces were in pretty bad shape."); *id.* at 56:24–57:4 ("Q: Okay and am I understanding correctly you were not able to lace them all the way to the top of the hooks? A: I actually skipped a few holes lower because I knew that the shoe laces were not good enough—not long enough; they were too short."). In fact, when Royal Caribbean's lawyer pressed Skindariene on whether the skates made it difficult for her to skate, Skindariene denied it and instead complained about the poor quality of the rink's ice. *See id.* at 69:3–14 ("Q: [D]id it feel like your skates were making it more difficult to skate? A: Close, it was mostly—the surface of the ice, it was like snowy on the surface, on the top of it. . . . Q: Okay. So does that mean you didn't notice that

your feet or ankles felt unstable? A: Yes, it was exciting, no, I didn't."). There is, in short, *no evidence* that the skates (rather than the poor quality of the ice) caused Skindariene to fall. Faced with this lack of evidence, Skindariene asks us to infer that the skates *might* have contributed to her fall because the laces were too short and full of knots. This is plainly improper. *See Collins*, 749 F.3d at 959 ("Impermissible inferences only exist, however, when no direct evidence is presented on negligence or causation and a jury infers causation based on an inference of negligence."); *In re Royal Caribbean*, 991 F. Supp. 2d at 1183 ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." (quoting *Gooding*, 445 So. 2d at 1018)).[6]

Since there's no evidence of causation, we **GRANT** summary judgment for Royal Caribbean on Count VI of the Amended Complaint and any portion of Counts I through V alleging that the skates (as opposed to the poor quality of the ice) were a dangerous condition that caused Skindariene's injuries.[7]

---

[6] Still resisting, Skindariene cites our opinion in *Hostert v. Carnival Corp.*, 2024 WL 68292 (S.D. Fla. Jan. 5, 2024) (Altman, J.), and says it's "common sense" that "unreasonably dangerous skates" could have been the proximate cause of Skindariene's injuries. Response at 18. Two problems with this. *One*, *Hostert* rejected Carnival's "absurd" argument that the plaintiff had to establish "that Carnival knew that water on the deck rendered the deck unreasonably slippery" because it's obvious that "wet floors are dangerous." 2024 WL 68292, at *8. Dangerous or not, though, there isn't as obvious an inferential link between short laces and slipping on an ice-skating rink as there is between a wet floor that's slippery. It's also harder to infer that Skindariene's skates caused her to fall when there's plenty of other evidence showing that the poor quality of the ice (and not short skate laces) caused Skindariene's injuries. *Two*, as Royal Caribbean points out in its Reply, this portion of *Hostert* "was analyzing notice and not the separate and distinct element of proximate cause." Reply at 10. We thus fail to see how *Hostert* has any bearing on the causation issue in our case.

[7] Since there's no evidence that Skindariene's skates caused her injuries, we won't address Royal Caribbean's remaining arguments that it didn't have notice of the skates' dangerousness or that this alleged dangerousness was open and obvious. *See, e.g.*, MSJ at 7 ("The record is likewise devoid of any evidence that Defendant knew or should have known that the condition of the laces in Plaintiff's skates was dangerous."); *id.* at 9 ("[T]o the extent Plaintiff contends that the danger posed by damaged

### III.     Notice of the Allegedly Dangerous Condition

Royal Caribbean's next argument is that Skindariene's direct-negligence claims (that is, Counts I through V of the Amended Complaint) fail because "there is no evidence that Defendant had either actual or constructive notice of any unreasonably dangerous condition that caused Plaintiff's accident." MSJ at 7. Skindariene pushes back, insisting that there's "abundant evidence" of both actual and constructive notice. Response at 3. Skindariene specifically refers to: (1) Royal Caribbean's own "warning video," "audio announcement," and "liability waiver it makes its passengers sign[,]" *ibid.*; (2) the Eleventh Circuit's previous holding in *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 F. App'x 531 (11th Cir. 2018), *id.* at 7; (3) the length of time "that the defective condition of the ice was present[,]" *id.* at 9; and (4) at least "five prior substantially similar incidents[,]" *id.* at 10. We agree with Skindariene that, at a minimum, there's evidence that Royal Caribbean had constructive notice of the dangerous condition on the ice-skating rink.

Shipowners (like Royal Caribbean) "owe their passengers a duty of 'ordinary reasonable care under the circumstances.'" *Rondon v. Carnival Corp.*, 2025 WL 2551262, at *2 (S.D. Fla. Sept. 5, 2025) (Altman, J.) (quoting *Keefe*, 867 F.2d at 1322). "This standard requires, as a prerequisite to imposing liability, that the carrier have had actual *or* constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. . . . [A] cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720 (emphasis added) (cleaned up). Actual notice "exists when the defendant knows about the dangerous condition[.]" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022). Constructive notice, on the other hand, "can be shown in at least two ways." *Rondon*, 2025 WL 2551262, at *5. *First*, the plaintiff can demonstrate "that a 'defective condition

---

laces was not open and obvious, there is no evidence that the condition of the laces was dangerous or that it caused or contributed to her accident in any way.").

existed for a sufficient period of time to invite corrective measures.'" *Ibid.* (quoting *Keefe*, 867 F.2d at 1322). Second, "a plaintiff can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Newbauer*, 26 F.4th at 935 (cleaned up). "The mere implication of actual or constructive notice is insufficient to survive summary judgment; rather, a plaintiff must show specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action." *Scott v. Carnival Corp.*, 2024 WL 1635904, at *6 (S.D. Fla. Mar. 12, 2024) (Moore, J.) (quoting *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) (Williams, J.)).

Skindariene's summary-judgment evidence is sufficient to show that Royal Caribbean had constructive notice of the poor quality of the ice on the rink because of how long the allegedly dangerous condition persisted. Skindariene testified that "the ice was not of good quality" the entire time she was skating (10 to 15 minutes) and that the ice kept getting "worse and worse" the longer she skated. Skindariene Depo. at 70:9–10, 72:16–17. The Eleventh Circuit has held (albeit in an unpublished opinion) that "a factfinder could readily conclude that Royal Caribbean employees should have noticed the gouges in the ice in the ten to fifteen minutes leading up to [the plaintiff's] fall." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 922 (11th Cir. 2020); *see also Rondon*, 2025 WL 2551262, at *6 ("But the Eleventh Circuit has found that much shorter periods of time—as short as ten minutes in fact—were long enough to put a defendant on constructive notice of the dangerous condition." (cleaned up)). If Skindariene noticed the poor quality of the ice, "it goes without saying that trained employees responsible for 'watching the ice' should notice them as well." *Lebron*, 818 F. App'x at 921–22. Royal Caribbean attempts to distinguish *Lebron*, arguing that Skindariene didn't testify "that there were 'gouges' in the ice" that caused her to fall. Reply at 5. But Skindariene said that she "lost [her] balance" when her skates "bumped into something . . . uneven . . . on the surface of the ice" and that the ice had "a bump or some cuts[.]" Skindariene Depo. at 74:5–19. We don't think

Skindariene's use of slightly different words in her deposition—for example, "believe" rather than "know" and "bump or some cuts" rather than "gouges"—meaningfully distinguishes this case from *Lebron*.

Because this evidence is sufficient to establish constructive notice, we decline to address whether Royal Caribbean had actual notice of the dangerous condition or whether constructive notice could have been established through prior, substantially similar incidents. In short, we **DENY** the MSJ insofar as it suggests that Royal Caribbean *didn't* have notice of the ice-skating rink's poor quality.

## IV.   The "Open and Obvious" Condition of the Rink

Royal Caribbean's penultimate argument is that the "failure to warn claim [Count IV] should be foreclosed by summary judgment because the danger of slipping, falling, and getting injured while ice skating is open and obvious." MSJ at 8; *see also id.* at 9 ("The notion that ice is slippery is no mystery to any reasonable person, nor is the fact that a bump or cut in ice could cause someone to lose their balance while skating."). Skindariene again relies on this Court's decision in *Lebron* and retorts that "a reasonable passenger would not have appreciated the danger of the defective ice[.]" Response at 16–17. This is a close call, but we agree with Royal Caribbean that the quality of the ice was an "open and obvious" condition that it had no duty to warn Skindariene about.

"[U]nder maritime law, a carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.); *see also Dudley v. NCL (Bahamas) Ltd.*, 688 F. Supp. 3d 1194, 1200 (S.D. Fla. 2023) (Bloom, J.) ("[C]ruise lines owe their passengers a duty to warn of known or foreseeable dangers." (cleaned up)). But the "operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (quoting *Guevara*, 920 F.3d at 720 n.5). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses.

Whether a danger is open and obvious is determined from an objective, not subjective, point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) (Moore, C.J.) (cleaned up); *see also Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition.").

To the extent Royal Caribbean is arguing that ice skating presents some inherent and obvious risks, we agree. *See, e.g.*, *Kulakowski v. Royal Caribbean Cruises, Ltd.*, 2017 WL 237642, at *2 (S.D. Fla. Jan. 18, 2017) (King, J.) ("[T]he Court finds the risk of falling due to ship movement is an open and obvious condition of ice skating aboard a ship for which Defendant had no duty to warn Plaintiff."); *Krug v. Celebrity Cruises, Inc.*, 2017 WL 4277165, at *3 (S.D. Fla. Sept. 25, 2017) (Scola, J.) ("Courts in this district have held that in the absence of some hidden danger, the inherent risk of injury in recreational activities is open and obvious."); *see also Fox v. Town of Oyster Bay*, 675 N.Y.S.2d 871, 871–72 (N.Y. App. Div. 1998) (holding that "skating on an outdoor skating rink" involves "risks associated with [the] open and obvious conditions of the ice surface"). But this argument misses the point. Skindariene isn't saying that she fell because of the inherent slipperiness of the rink, she's alleging that the "uneven" surface of the ice caused her to fall. *See* Amended Complaint ¶ 14(a) ("The ice in the ice-skating rink had unreasonable slopes/grooves that made the ice bumpy[.]"). We thus agree with Skindariene that Count IV doesn't implicate the inherent dangers of ice skating, but is instead about "the danger of . . . the ice" and whether that specific condition was either a "hidden danger" or "open and obvious" when she fell. Response at 17; *see also, e.g.*, *Lebron*, 2018 WL 5113943, at *5 ("At the outset, the undersigned observes that it is not the inherent slippery condition of the ice that is at issue but the unreasonably dangerous condition of the ice due to improper maintenance that is in dispute.").

Even so, Sindariene's reliance on *Lebron* is misplaced. In that case, the plaintiff introduced an expert opinion that "Lebron's fall was, in part due to the west, soft, and dirty ice conditions, created

by improper use of the resurfacer[.]" *Lebron*, 2018 WL 5113943, at \*5. That expert report, the court explained, made the case "distinguishable from those cases where courts routinely recognize that sports and similar recreational activities pose an inherent risk of injury and that such inherent risk, in the absence of some hidden danger, is open and obvious." *Id.* at \*11.[8] The only evidence supporting the dangerous condition of the ice on the day Skindariene fell, so far as we can tell, is Skindariene's own testimony. *See* Skindariene Depo. at 69:6–8 ("[T]he surface of the ice, it was like snowy on the surface, on the top of it."); *id.* at 70:9–11 ("I notice that the ice is worse and worse and I though may I should just stop skiing—skating[.]"). And, far from suggesting (like the experts in *Lebron* and *Frasca*) that these ice defects weren't open and obvious, Skindariene *admitted* that she knew the rink's ice was "not of good quality." *Id.* at 72:14–15.

Royal Caribbean has thus met its "burden of proving that the dangerous condition was open and obvious." *Hager v. Royal Caribbean Cruises, Ltd.*, 2022 WL 1658830, at \*4 (S.D. Fla. May 25, 2022) (Huck, J.). Skindariene specifically testified that she: (1) observed the poor quality of the ice; (2) was concerned about the poor quality of the ice; and (3) continued skating despite her concerns. *See* Skindariene Depo. at 73:8–11, 73:23–74:2 ("A: At the very beginning I saw that the ice is of poor quality. And then about 10 minutes it started, like snow was on the surface, it was worse, probably

---

[8] The other cases Skindariene relies on—*Frasca v. NCL (Bahamas) Ltd.*, 654 F. App'x 949 (11th Cir. 2016), and *Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246 (11th Cir. 2018)—are also distinguishable. Like *Lebron*, the plaintiff in *Frasca* relied on expert testimony to show that the slippery nature of the deck wasn't open and obvious. *See Frasca*, 654 F. App'x at 952–53 ("Plaintiff introduced an expert's report suggesting that the deck in question is *unreasonably* slippery when wet. The report suggests that a reasonable person would have known that the deck would be slippery, but not as slippery as it actually was. . . . Given these facts, a reasonable jury could conclude that the degree of slipperiness on the deck was not open and obvious."). Here, as we'll explain in a moment, Skindariene *admitted* that she knew the ice looked unsafe, but she continued skating anyway. In *Petersen*, there was evidence that the defendant "used the Bolidt Super Stripper detergent on the Select Soft deck, even though that was not recommended by the manufacturer." 748 F. App'x at 250. Skindariene, by contrast, hasn't offered any evidence for the proposition that Royal Caribbean was *deliberately* ignoring warnings from the manufacturer of the ice-skating rink.

more shredded. . . . Q: Okay. But there was no point when you thought that you should stop skating because of the condition of the ice? A: I was thinking I should stop but I just wanted to finish.").

It's true, of course, that the "open and obvious" nature of a hazard "is determined from an objective, not subjective, point of view." *Lugo*, 154 F. Supp. 3d at 1346. But judges in our District have repeatedly found "allegedly dangerous conditions to be objectively open and obvious where plaintiffs admitted to observing and appreciating them before their accidents." Reply at 9; *see, e.g.*, *Roberts v. Carnival Corp.*, 2021 WL 3887819, at *6 (S.D. Fla. May 25, 2021) (Moore, C.J.) ("However, here, Plaintiff saw the subject threshold as she approached it and could have seen it as she stepped over it, if she had looked down. Therefore, none of the facts cited by Plaintiff change that the risks associated with the subject threshold were open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight." (cleaned up)); *Price v. Carnival Cruise Lines*, 2022 WL 2713727, at *8 (S.D. Fla. July 13, 2022) (Bloom, J.) ("[G]iven Plaintiff's testimony that she could have and should have seen the clamp, this Court determines that any reasonably prudent person through the exercise of common sense and the ordinary use of his/her eyesight could have noticed the clamp and any danger it could have posed."); *Taiariol v. MSC Crociere, S.A.*, 2016 WL 1428942, at *4 (S.D. Fla. Apr. 12, 2016) (Moore, C.J.) ("Though analysis of whether a condition is open and obvious is applied from an objective standpoint, the Court notes that Taiariol was also aware of the metal wear strip on the step she allegedly slipped on.").

And that makes sense: If the ice's quality was so bad that Skindariene, a lay person with no expertise in rink maintenance and safety, *immediately* recognized its flaws, then it's probably fair to say that other reasonable people would have recognized the open and obvious danger the rink posed. *See Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015) ("Here, the risk-creating condition, the alleged cloudiness of the water, was open and obvious to plaintiff Smith by his own account. He recognized 'right away' that he could not see while he was swimming underwater and

noticed the murkiness of the water before even entering the pool. Defendant Royal did not breach its duty of reasonable care by failing to warn him of a condition of which he, or a reasonable person in his position, would be aware."). Since any "reasonable person would have observed the condition" of the ice and "appreciated the nature of the condition[,]" *Malley*, 713 F. App'x at 908, the poor quality of the ice in the rink was an "open and obvious" danger Royal Caribbean had no duty to warn Skindariene about.[9]

> We therefore **GRANT** the MSJ on Count IV of the Amended Complaint.

## V.    The Negligent-Design Claims

> Royal Caribbean's final argument is that Skindariene failed to offer any evidence that "the skating rink or skates were improperly designed in a way that caused or contributed to Plaintiff's fall." MSJ at 10. "With respect to the skates," Royal Caribbean says, Skindariene didn't "come forward with any evidence that the laces were frayed or had knots by design, that the condition of the laces had anything to do with her fall, or that any other element of the design of the skates was unreasonable." *Id.* at 10–11. "As for the rink," Royal Caribbean continues, Skindariene failed to "disclose an expert to testify about how the design of the rink was unreasonable, nor is there any obvious connection between the rink's design and the condition of the ice or number of people using it at the time of Plaintiff's fall." *Id.* at 11. Skindariene responds that Royal Caribbean's corporate representative testified that the company "approved of the design of the ice rink." Response at 19. We agree with Royal Caribbean that Skindariene hasn't offered *any* evidence of negligent design.

---

[9] But this doesn't mean that Royal Caribbean wasn't negligent in *other* ways. *See Carroll*, 955 F.3d at 1269 ("Accordingly, even if the risk was open and obvious, that does not preclude Mrs. Carroll's negligent maintenance claim."). The open-and-obvious doctrine only bars Skindariene's negligent-failure-to-warn claim—not her other negligence claims. *See Lebron*, 2018 WL 5113943, at *9 ("Here, as stated above, if the undersigned found, as a matter of law, that the conditions about which the Plaintiff complains were open and obvious, the Defendant would have no duty to warn of those dangers, and the Plaintiff would be unable to prevail on his duty to warn claims.").

To prove a case of negligent design, Skindariene must present evidence that Royal Caribbean "actually created, participated in, or approved the alleged negligent design" of the dangerous condition. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012); *accord Katzoff v. NCL (Bahamas) Ltd.*, 2020 WL 7493098, at *2 (S.D. Fla. Aug. 31, 2020) (Cooke, J.) ("To state a claim for negligent design . . . , Plaintiff must allege, among other things, that Defendant 'actually created, participated in, or approved the alleged negligent design' of the risk-creating condition."). Skindariene must show, in other words, that Royal Caribbean "participated in (or approved of) the design of the area that caused [her] injury[.]" *Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1371 (S.D. Fla. 2024) (Altman, J.).

Skindariene pled her negligent-design claim under two theories: direct liability (Count V) and vicarious liability (Count VII). *See* Amended Complaint ¶¶ 88, 115. To prevail on a theory of direct negligence, Skindariene must show that Royal Caribbean "had actual or constructive notice of such hazardous condition." *Groves*, 463 F. App'x at 837. To hold Royal Caribbean vicariously liable, by contrast, Skindariene "need not establish that [Royal Caribbean] had actual or constructive notice of a risk-creating condition," *Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021), but she must "identify [a] specific crewmember whose negligence caused [her] injury," *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022).

Skindariene hasn't proffered *any* evidence showing that Royal Caribbean "actually created, participated in, or approved" the allegedly negligent design of Skindariene's ice skates. *Groves*, 463 F. App'x at 837. In fact, Skindariene appears to *concede* the issue in her Response to Royal Caribbean's Statement of Material Facts. *See* DSMF ¶ 19 ("There is no evidence that Defendant participated in the design of the skates."); DSMF Response ¶ 19 ("Undisputed only as to the skates[.]"). This apparent concession—paired with the lack of evidence—is more than enough for us to grant summary judgment on Skindariene's negligent-design claims as they relate to the ice skates. *See Thomas v. NCL*

*(Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1194 (S.D. Fla. 2016) (Williams, J.) ("In his opposition to NCL's motion for summary judgment, Plaintiff does not address NCL's argument regarding his negligent design/installation theory of liability, and neither admits nor denies NCL's statement of fact that there is no evidence in the record that NCL installed, manufactured, or designed Deck 13's surface. The Court construes Plaintiff's silence as an admission that there is no such evidence in the record.").

And Skindariene hasn't adduced *sufficient* evidence to create a genuine dispute of material fact about the alleged negligent design of the ice-skating rink. Skindariene's negligent-design claims rest on one answer Royal Caribbean's corporate representative gave during her deposition:

> [Skindariene's Counsel]: Okay. When Royal Caribbean received the ship with the ice skating rink on it, though, it approved of it? Like it found it satisfactory and it approved of it, correct?
>
> [Royal Caribbean's Counsel]: Objection. Form.
>
> [Corporate Representative]: Again, I'm—I'm saying Royal Caribbean owns, operates and—and is fine. Yes, it's—it's our ice skating rink. *It's approved of.* It's been on the ship for 20—it's a 20-year-old ship.

Deposition of Amanda Campos ("Campos Depo.") [ECF No. 52-3] at 183:17–25 (emphasis added). This objected-to testimony, Skindariene says, is sufficient to show that Royal Caribbean "approved of the design of the ice rink." Response at 19. We're skeptical that this is what Ms. Campos was saying, especially since she was clear that she had no personal knowledge of the ice-skating rink's approval or installation process—which happened over twenty years earlier. *See* Campos Depo. at 184:9–13 ("If you're asking as to who 20 years ago was involved in—from Royal Caribbean in I don't even know what part of it and saying that we want to have an ice skating rink on the ship, no, it's—I don't know who that was."). Given Ms. Campos's lack of any personal knowledge, her speculation about Royal Caribbean's alleged approval of the ice-skating rink would (very likely) be inadmissible at trial. *See* FED. R. EVID. 602. Ms. Campos's qualified (and inadmissible) answer is thus insufficient for a reasonable jury to conclude that Royal Caribbean approved the ice-skating rink's design. *See Anderson*, 477 U.S. at

252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

But here's the thing: Even if Ms. Campos's testimony were both admissible *and* sufficient to establish that Royal Caribbean approved the ice-skating rink's design, Skindariene *still* hasn't done enough to show that the ice-skating rink was *negligently* designed. Although Skindariene has suggested that the rink's ice was of poor quality, there's nothing in the record to support her view that the rink's *design* caused this bad ice to form. *See* MSJ at 11 ("As for the rink, Plaintiff did not disclose an expert to testify about how the design of the rink was unreasonable, nor is there any obvious connection between the rink's design and the condition of the ice or number of people using it at the time of Plaintiff's fall."); *see also Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1287 (M.D. Fla. 2009) (Kovachevich, J.) ("Proof of negligent design . . . requires evidence of the existence of a defect in the product." (cleaned up)). And Skindariene never even tries to fill in this conspicuous hole in her evidence. *See* Reply at 11 ("Defendant's motion for summary judgment argues first, that there is no evidence that [the] ice-skating rink . . . [was] defectively designed[.] . . . Plaintiff's response completely ignores the first argument and does not direct this Court to any evidence of a negligent design."). Without any evidence showing that the ice-skating rink was, in fact, negligently designed, Royal Caribbean is entitled to summary judgment on the two negligent-design claims. *See Thomas*, 203 F. Supp. 3d at 1194; *see also* FED. R. CIV. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]").

We therefore **GRANT** summary judgment for Royal Caribbean on Counts V and VII of the Amended Complaint.

## CONCLUSION

Accordingly, we hereby **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 43] is **GRANTED in part** and **DENIED in part**.

   a. Summary judgment is **GRANTED** for Royal Caribbean on Counts IV, V, VI, and VII of the Amended Complaint.

   b. As for Counts I, II, and III of the Amended Complaint, summary judgment is **GRANTED** as to whether Skindariene's skates or the "overcrowding" of the ice-skating rink were dangerous conditions that caused Skindariene's fall. So the only remaining allegedly dangerous condition that might support Skindariene's negligence claims is her allegation that "[t]he ice in the ice-skating rink had unreasonable slopes/grooves that made the ice bumpy . . . thereby causing the ice-skating rink to be hazardous[.]" Amended Complaint ¶ 14(a).

   c. All other portions of the MSJ are **DENIED**.

2. The Clerk is directed to **REOPEN** this case and **LIFT** the stay. We'll enter a new scheduling order—which will set new deadlines and place this matter back on our trial calendar—in a separate order.

**DONE AND ORDERED** in the Southern District of Florida on October 1, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record